**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SNI COMPANIES** )<br>4500 Westown Parkway )<br>Regency West 5 )<br>Suite 120 )<br>West Des Moines, Iowa 50266 )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>**SHAWN M. REDWINE** )<br>2121 North Westmoreland Street )<br>Apartment 203 )<br>Arlington, Virginia 22213 )<br>)<br>      Defendant. ) | Civil Action No:_____ |

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, SNI Companies ("SNI"), through counsel, states the following as its Complaint for Injunctive Relief and Damages against Defendant Shawn M. Redwine ("Defendant"). SNI seeks injunctive relief and damages arising from the actions of Defendant, its former employee. In this action, SNI seeks to recover money and confidential information misappropriated by Defendant, restrain Defendant from further use of SNI's confidential information, and to protect SNI's legitimate business interests and to enforce its Employment and Non-Competition Agreement with Defendant.

## PARTIES

1. Plaintiff SNI is a Delaware corporation with its principal place of business in West Des Moines, Iowa.

2. Defendant is a resident of Arlington, Virginia and is a former employee of SNI and he previously worked for SNI at its offices at 1101 Connecticut Avenue N.W., Suite 310, Washington, D.C. 20036.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties to this action and the amount in controversy exceeds $75,000.

4. Venue is proper in that Defendant worked for SNI in Washington, D.C., the agreement at issue was executed in Washington, D.C. and the unlawful acts complained of were committed in Washington, D.C.

## FACTS

5. SNI is a full-service specialty staffing firm focusing on the temporary, permanent and contract placement of professionals and para-professionals in fields including, but not limited to accounting, IT, engineering, legal, finance, office clerical, insurance brokerage, and human resources administration.

6. In exchange for Defendant's employment and other valuable consideration, Defendant and SNI entered into an Employment and Non-Competition Agreement on June 18, 2012 ("Agreement"), which is incorporated herein and attached as Exhibit 1.

7. SNI is engaged in a highly competitive business in which the protection of confidential, proprietary and trade secret information is vital in order to prevent competitors or would-be competitors from obtaining an unfair competitive advantage.

8. As a Business Development Manager and agent for SNI, Defendant's duties under the Agreement included, but were not limited to, the management and development of business

relationships with customers and prospective customers, including candidates and prospective candidates, assisting customers in training, hiring of non-temporary employees and supplying such customers with temporary employees.

9. During the term of the Agreement, Defendant was required to devote his entire working time to the performance of his duties, faithfully, honestly and to the best of his ability, and he was not permitted to render services to, or enter into employment with, any other person or business entity without SNI's consent or engage in any activity that might adversely affect the business or reputation of SNI.

10. SNI provided Defendant with specialized training necessary to perform his job duties, including utilization of SNI's customized software, correlation between skill set and job order, interviewing qualifiers, interviewing skills, techniques on taking a comprehensive job order, how to decipher mainstream experience specific to the recruiting industry, in depth debriefing/briefing strategies on interviews, reference checking techniques, situational role playing of real world scenarios, planning techniques for targeted recruiting, targeted recruiting training, situational role playing of opportunity presentations, and interview ratings, all of which exposed Defendant to SNI's confidential business information.

11. Defendant agreed that during the term of his employment with SNI, or thereafter, he would not, directly or indirectly, use, disclose, furnish or provide unauthorized access to any confidential business information obtained during his employment, including, without limitation, information with respect to any customer, client, applicant or employee of SNI, whether temporary or permanent in nature, or information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of SNI in the temporary and permanent employee placement business, and upon his termination, would promptly deliver to

3232253.1

SNI originals and any copies of SNI's confidential business information, including records, manuals, training material, and other property belonging to SNI or used in connection with SNI's business, and would immediately transition exclusive control of any social media and networking tools in connection with his employment with SNI.

12. As a material part of the Agreement, and in consideration of employment and other consideration provided in the Agreement, Defendant agreed that for a period of twelve months after his termination of employment for any reason, he would not:

(a) Within a 50-mile radius from any office of SNI:

(i) work for any competitive business in a position substantially similar to any position Defendant held during the last twelve months of employment; or

(ii) be an officer, director, shareholder or partner of, or otherwise own any interest in any competitive business; or

(b) directly or indirectly solicit the provision of staffing services for any business or entity competing with SNI, or perform staffing services for any of SNI's customers or potential customers with whom Defendant worked, solicited or otherwise had contact during the last twelve months of employment at SNI; or

(c) directly or indirectly hire, solicit for hire or induce or attempt to induce to leave SNI's employ any other employee, including permanent or temporary employees or candidates of SNI who were employed within the six month period prior to Defendant's termination.

13. Defendant agreed that after his termination of employment with SNI, he would not indicate on any stationery, business card, advertising, or other business materials that he is or was formerly and employee of SNI or of any divisions or subsidiary of SNI, except in the bona fide submission of resumes and the filing of applications in the course of seeking employment.

14. Despite his agreement to the contrary, in the course of Defendant's employment, Defendant competed against SNI, and under the color of authority as an SNI manager, misappropriated and converted to his own use fees belonging to SNI.

15. During the course of his employment, Defendant knowingly and without authorization sent invoices to SNI customers, which he made to look like legitimate SNI invoices, so as to induce SNI customers to follow his instruction, that he put on these invoices, to make payment directly to Defendant for fees owed to SNI pursuant to contracts he was aware of between SNI and the customers. Examples of these invoices, both legitimate and those made by Defendant are incorporated herein and attached as Exhibit 2.

16. On information and belief, on each of these occasions, SNI clients followed Defendant's instruction and made payment directly to Defendant.

17. On each occasion where SNI clients paid Defendant for fees owed to SNI, Defendant failed to remit such payments to SNI, and converted such payments to his own use.

18. Defendant resigned from his employment with SNI effective January 30, 2015.

19. Shortly after Defendant resigned his employment with SNI, SNI discovered that Defendant had been competing with SNI during his employment and continues to compete with SNI, in violation of the Agreement by using SNI customer lists, trade secrets and information and proprietary and confidential information to solicit current clients and offer similar services using competitive information about SNI that he improperly obtained or retained.

20. Shortly after Defendant resigned his employment on January 30, 2015, despite reasonable efforts to protect its confidential information and trade secrets, security personnel at SNI offices witnessed, and security video tape recorded Defendant returning to SNI offices where Defendant was formerly employed after business hours and leaving with documents, which, on information and belief, included SNI confidential, proprietary, trade secrets and competitively sensitive documents and information, including SNI client lists and information.

21. Shortly after Defendant's resignation from employment with SNI, SNI clients reported to SNI that Defendant had contacted them and was soliciting their staffing business.

22. Defendant's attempts to solicit SNI clients for staffing business is ongoing.

23. SNI spent a significant amount of time and money marketing to attract clients for its services, building customer relationships with clients, and reimbursing its business development managers, including Defendant, for appropriate client development expenses.

24. SNI protected its business relationships and confidential information by requiring Defendant, as a condition of becoming a Business Development Manager, to agree not to use or disclose SNI's confidential information, not to solicit SNI's customers, and not to compete with SNI within a reasonable territorial limit of 50 miles and for a reasonable period of twelve months following the ending of his employment relationship with SNI.

25. If Defendant is permitted to contact and solicit business from the customers with whom he dealt with on behalf of SNI during the last 12 months of his employment with SNI, using information and trade secrets he would not have had but for his employment with SNI, it will be unfair and to the detriment of SNI.

26. Defendant's wrongful competition and wrongful solicitation is detrimental to SNI in ways unlikely to be measurable or quantifiable in terms of only monetary damages, in that he is using confidential information and trade secrets in a way that someone without that information could not.  Defendant's wrongful conduct can only be enjoined by the Court's exercise of equitable jurisdiction.

## EQUITABLE CONSIDERATIONS

27. Substantial Likelihood of Success -- SNI has substantial evidence, including that incorporated herein and filed herewith, that Defendant competed against SNI during his

employment with SNI, and continues to directly compete against SNI in violation of a narrowly drawn, reasonable and enforceable noncompete agreement, and is therefore substantially likely to prevail on the merits in this case.

28. Irreparable Harm -- There exists a danger that SNI will suffer irreparable harm from the loss of its customers and by the possibility of permanent damage to its relationship with customers, and from the disclosure of proprietary and confidential information to market competitors, causing SNI to lose its competitive advantage, which would be hard to quantify through money damages.

29. Balance of Harm -- Upon review and execution of the Agreement, Defendant acknowledged that the restrictive covenants contained therein are reasonable and necessary to protect and maintain the proprietary and other legitimate business interests of SNI, and that the enforcement of the covenants would not prevent Defendant from earning a living.  Thus, given the potential irreparable harm described above, it is clear that more harm will result from the denial of the injunction than will result to Defendant from its grant because the prohibitions in the noncompete are reasonable and narrowly drawn so as not to unduly interfere with Defendant's livelihood.

30. Public Interest -- There is no public interest in this case that may be disserved by issuance of an injunctive order.

### COUNT I – BREACH OF CONTRACT AND RESTRICTIVE COVENANTS

31. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 30 of the Complaint and attachments thereto.

32. Defendant had a contractual obligation supported by consideration, which included Restrictive Covenant provisions agreed to by Defendant in the Agreement, which

provided, in part, that for a period of twelve months after his termination of employment for any reason, Defendant would not:

    (a)    Within a 50-mile radius from any office of Employer:

        (i)    work for any Competitive Business in a position substantially similar to any position Employee held during the last twelve (12) months of employment at Employer; or

        (ii)    be an officer, director, shareholder or partner of, or otherwise own any interest in any Competitive Business, as defined below; or

    (b)    directly or indirectly solicit the provision of staffing services for any business or entity competing with Employer, or perform staffing services for any of Employer's Customers or Potential Customers with whom Employee worked, solicited or otherwise had contact during the last twelve (12) months of employment at Employer; or

    (c)    directly of indirectly hire, solicit for hire or induce or attempt to induce to leave Employer's employ any other employee, including permanent or temporary employee or candidate, of Employer who were employed within the six (6) month period prior to Employee's termination.

For purposes of this Agreement, "Customer" is defined as an person, corporation or other entity that has requested Employer to perform staffing services.  "Potential Customer" is defined as any person, corporation or other entity with which Employer has held discussions regarding the possibility of rendering staffing services or to which Employer has made any oral or written proposal for the performance of staffing services.  "Competitive Business" is defined as any business endeavor other than the Company, including but not limited to, any self-owned business or self-employment if the employee, engaged in the business of placing temporary and/or permanent employees or candidates.  As used herein, the term "directly or indirectly" shall include not only acts performed directly by Employee but also acts performed by any person under Employee's supervision, direction or control. (Exhibit 1, paragraph 8).

33.    Defendant breached the agreement by soliciting current SNI customers with whom Defendant had worked and had contact while employed by SNI to provide staffing services.

34.    On information and belief, Defendant is engaged in his own Competitive Business as defined in and in breach of the Agreement.

3232253.1

35. Defendant's conduct in soliciting current SNI Customers is a material breach of the express and unambiguous terms of the Restrictive Covenant in the Agreement.

36. Defendant's conduct in direct competition within 50 miles and before the expiration of twelve months from his resignation of employment with SNI is a material breach of the express and unambiguous terms of the Restrictive Covenant provisions in the Agreement.

37. SNI has a legitimate business interest in prohibiting Defendant from directly competing against SNI and the Restrictive Covenant provisions are reasonable and necessary to protect and maintain the proprietary and other legitimate business interest of SNI and will not prevent Defendant from earning a livelihood.

38. As a direct and proximate result of Defendant's said breach of contract, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of sales, customers, profits and goodwill and unless Defendant is enjoined from violating his Restrictive Covenants, SNI will suffer immediate and irreparable injury.

39. SNI has no adequate remedy at law to prohibit Defendant from violating his Restrictive Covenant by working in direct competition.

40. Defendant's conduct constitutes a breach of his Restrictive Covenant and will continue unless enjoined by this Court.

### COUNT II – **VIOLATION OF D.C. TRADE SECRETS ACT**

41. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 40 of the Complaint and attachments thereto.

3232253.1

42. In his role as a Business Development Manager, Defendant had access to SNI's trade secrets, such as its product information and pricing, training, and customer information and was under a duty, contractually and otherwise, not to disclose such trade secrets.

43. These trade secrets derive actual or potential independent economic value from not being generally known to, and not being readily ascertainable by proper means by another who can obtain economic value from disclosure or use of these trade secrets, and SNI took reasonable precautions to maintain the secrecy of its trade secrets, including maintaining the same on a secured premises.

44. Defendant gained access to the trade secrets by improper, deceptive means, trespass and unauthorized access to SNI's premises.

45. Defendant is using the trade secrets he improperly obtained from SNI in direct competition against SNI.

46. Defendant is using the trade secrets he improperly obtained from SNI by soliciting business from the customers with whom he dealt on behalf of SNI.

47. Defendant's use of the trade secrets is a breach of confidence that SNI placed in him.

48. As a direct and proximate result of Defendant's violations of the Trade Secrets Act, SNI has suffered and continues to suffer immediate injury, loss and damage to its business, including but not limited to the actual or prospective loss of sales, customers, profits and goodwill.

49. Defendant's actions were intentional, willful and malicious.

## COUNT III – <u>TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE OR CONTRACT</u>

50.     SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 49 of the Complaint and attachments thereto.

51.     As a Business Development Manager, Defendant was aware of SNI's business relationship with its clients with whom Defendant worked.

52.     Defendant intentionally interfered with the relationship by intercepting payments owed by SNI customers and using such payments for his own account, and by soliciting SNI customers to not continue business with SNI and by soliciting SNI employees to breach contracts with SNI customers and redirect SNI customers to Defendant's business.

53.     SNI lost revenue that it was entitled to from its contracts with its clients and as a direct and proximate result of Defendant's tortious interference with prospective advantage or contract, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of sales, customers, profits and goodwill.

## COUNT IV – <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

54.     SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 53 of the Complaint and attachments thereto.

55.     As a Business Development Manager, Defendant was aware of SNI's contracts with its customers with whom Defendant worked.

56.     Defendant intentionally procured breaches of these contracts by intercepting payments owed by SNI customers to SNI and using such payments for his own account, and by soliciting SNI customers to not continue business with SNI.

57. SNI lost revenue that it was entitled to from its contracts with its customers and as a direct and proximate result of Defendant's tortious interference with SNI's contracts with its customers, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of sales, customers, profits and goodwill.

## COUNT V – CONVERSION

58. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 57 of the Complaint and attachments thereto.

59. Defendant, through his work with SNI customers, was aware that SNI had contractual agreements with and rights to certain fees from its customers for services performed by Defendant as an agent for SNI.

60. Defendant intentionally, maliciously and unlawful exercised ownership, dominion, and control over the fees paid to SNI by its clients by causing SNI clients to improperly pay fees directly to Defendant, resulting in a denial or repudiation of SNI's right to its property.

## COUNT V - TRESPASS

61. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 60 of the Complaint and attachments thereto.

62. Shortly after his resignation from employment, Defendant gained unauthorized entry to SNI offices, where Defendant formerly worked, without consent and using deception or covertly acquired security access.

63. During such trespass, Defendant acquired unlawful access to and possession of SNI documents, information and trade secrets.

64. As a direct and proximate result of Defendant's trespass, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of sales, customers, profits and goodwill.

## COUNT VI – <u>BREACH OF DUTY OF LOYALTY</u>

65. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 64 of the Complaint and attachments thereto.

66. Defendant, as a Business Development Manager had access to confidential business information, access to fees owed by customers of SNI, and had a fiduciary relationship with SNI and a duty to SNI not to use confidential knowledge he acquired in his employment in competition with his employer.

67. Defendant was an agent of SNI and had a duty to act solely for the benefit of SNI and to avoid conflicts of interest between his duty to SNI and his own self-interest.

68. Defendant breached his duty when he intercepted fees owed to SNI by customers and used such fees for his own account.

69. Defendant breached his duty when he competed with SNI while still employed by SNI.

70. As a direct and proximate result of Defendant's breach of his duty of loyalty, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of sales, customers, profits and goodwill.

## COUNT VII – <u>FRAUD</u>

71. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 70 of the Complaint and attachments thereto.

72. Defendant falsely represented to SNI customers that the fees owed to SNI should be paid directly to Defendant.

73. Defendant knew that he was not authorized to be paid fees owed to SNI directly by customers.

74. By creating false invoices to look like legitimate SNI invoices and sending those invoices to SNI customers for whom he had provided services and establish rapport, Defendant intended to and did induce reliance by SNI customers on his false invoices as being legitimate.

75. On several occasions, SNI customers paid fees owed to SNI to Defendant in reliance on Defendant's inducement and false representation.

76. As a direct and proximate result of Defendant's misrepresentations, SNI has suffered and continues to suffer immediate and irreparable injury, loss and damage to its business, including but not limited to the actual or potential loss of profits, sales, customers, profits and goodwill.

**PUNITIVE DAMAGES**

77. SNI adopts and incorporates into this paragraph all of the averments in paragraphs 1 through 76 of the Complaint and attachments thereto.

78. Defendant's actions, as alleged above, have been and are being conducted in a knowing, willful, malicious or intentional manner, or with reckless indifference to SNI's rights, and therefore satisfy the standard for punitive damages under D.C. law.

79. SNI hereby pleads such punitive damages pursuant to D.C. law, and alleges that it is entitled to recover same as a direct and proximate result of said actions by Defendant, or either of them.

## **PRAYER FOR RELIEF**

**WHEREFORE**, SNI prays for relief as follows:

(a) The Court take jurisdiction of the parties and subject matter hereof;

(b) That judgment be entered for SNI and against Defendant for breach of the Employment and Non-Competition Agreement and upon motion, a temporary restraining order, preliminary injunction, permanent injunction, or either of them, be issued to enjoin Defendant from engaging in any action that violates the noncompetition, nonsolicitation, confidentiality or other provisions and restrictive covenants of the Employment and Non-Competition Agreement alleged herein, or from any action that violates the D.C. Trade Secrets Act or any other law, for such time, territory and under such terms as requested in any such motion, or as may otherwise be determined by the Court;

(c) The Court award to SNI from Defendant, actual, compensatory, consequential and punitive damages in an amount in excess of $75,000.00, or as may otherwise be proven at trial;

(d) The Court award to SNI from Defendant, attorneys' fees and expenses as may be allowed by law;

(e) The Court award to SNI from Defendant, prejudgment and post-judgment interest at the legal rate pursuant to the laws of the District of Columbia;

(f) The costs of this action be taxed against Defendant; and

(g) The Court award to SNI such other and further relief as is just and proper.

[*signature on following page*]

3232253.1

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

Date:  March 13, 2015    By:  /s/ Robert P. Floyd, III
Robert P. Floyd, III (D.C. Bar No. 464996)
12500 Fair Lakes Circle, Suite 300
Fairfax, Virginia 22033
Telephone:    (571) 522-6100
Facsimile: (571) 522-6101
Email: rfloyd@constangy.com

3232253.1